Filed 10/6/21  Marriage of Connolly CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| In re the Marriage of DIANE and JOSEPH CONNOLLY. | C091416 |
| DIANE CONNOLLY,<br><br>Respondent,<br><br>v.<br><br>JOSEPH CONNOLLY,<br><br>Appellant;<br><br>EL DORADO COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES,<br><br>Intervener and Respondent. | (Super. Ct. No. PFL20030299) |

1

This is the latest of a number of appeals arising from Joseph Connolly's long-running dispute with his ex-wife Diane Connolly over spousal and child support arrearages.[1]  Joseph, a self-represented litigant, challenges the family court's orders denying his three separate motions for sanctions and his related motion for disclosure of records from the El Dorado County Department of Child Support Services (the Department).  Finding no error, we affirm.

## BACKGROUND

This case has a lengthy and somewhat complicated procedural history involving legal proceedings in California and Utah.  We summarize only the facts relevant to the disposition of the issues raised on appeal.  A more detailed discussion of the background of this case is set forth in our prior opinion, *In re Marriage of Connolly* (2018) 20 Cal.App.5th 395 (*Connolly*).[2]

*Original California Court Orders*

Joseph and Diane were married in 1988 and had two sons, born in February 1991 and November 1994.  (*Connolly, supra*, 20 Cal.App.5th at p. 399.)  In August 2004, the marriage was dissolved and the El Dorado County Superior Court (California court) ordered Joseph to pay Diane $400 a month in spousal support.  (*Ibid*.)

In November 2005, the California court ordered Joseph to pay $1,610 a month in child support, commencing August 2005.  (*Connolly, supra*, 20 Cal.App.5th at p. 399.)  The court also ordered Joseph to pay $100 a month in arrearages beginning October 2005.  (*Ibid*.)

---

[1]  Because Joseph and Diane share the same last name, we refer to them by their respective first names.

[2]  Except for the proceedings that occurred in the California court after we issued our opinion in *Connolly*, all background information is taken from that opinion.  We refer to *Connolly* as our "prior opinion" where formal citation is not required.

In 2009, the parties stipulated to modify the support orders effective June 1. The California Court reduced Joseph's child support obligation to $1,023 a month and reduced Joseph's spousal support obligation to $372 a month. (*Connolly, supra*, 20 Cal.App.5th at p. 399.)

*The Utah Judgment*

In 2012, the parties were living in Utah and Diane transferred support enforcement from the Department to the Utah Office of Recovery Services (Utah ORS). (*Connolly, supra*, 20 Cal.App.5th at pp. 399-400.) The Utah ORS sent Joseph a notice that he owed $65,704.93 in past due support. (*Id*. at p. 400.) There was no indication as to how this amount was calculated or whether it included interest. (*Ibid*.) In response, Joseph requested an adjudicatory hearing to review the amount of arrearages. (*Ibid*.)

In December 2012, the Utah ORS issued an order and decision finding that, as of November 30, 2012, Joseph owed $30,580.66 in child support arrears and $19,911.07 in spousal support arrears, for a total of $50,491.73. (*Connolly, supra*, 20 Cal.App.5th at p. 400.) The order did not include interest on the arrearages. (*Ibid*.) Utah's policy was to not collect interest on an out-of-state support order unless the amount had been reduced to a lump sum by judicial order or judgment or the initiating state (here California) had calculated the interest and provided the Utah ORS with the specific interest amount. (*Ibid*.) Diane did not request a hearing to contest the validity of the order. (*Ibid*.)

In May 2013, Diane filed an order to show cause in Utah for a judgment against Joseph for $69,537.70 for child and spousal support arrearages as of April 5, 2013. (*Connolly, supra*, 20 Cal.App.5th at p. 400.) In June, the Utah court found Diane had not appealed the administrative order on arrearages, so the $50,491.73 order stood. (*Ibid*.) After Diane's objection to the order was rejected, judgment was entered in the amount of $50,491.73 (the Utah judgment). (*Ibid.*)

*Litigating the Utah Judgment in California*

In July 2013, Joseph moved back to California. (*Connolly, supra*, 20 Cal.App.5th at p. 399.) In October, he filed a motion in the California court to terminate spousal support. (*Id.* at p. 400.) Thereafter, the court reduced the amount of spousal support to zero effective October 28, 2013, but found it "inappropriate" to disturb the Utah judgment on spousal support arrearages. (*Ibid.*)

In 2014, the Utah ORS terminated its child support services and the Department reopened its child support case. (*Connolly, supra*, 20 Cal.App.5th at p. 400.) In June 2014, the California court issued an income withholding order of $535 a month against Joseph's Coast Guard pension.[3] (*Ibid.*) In August, this order was amended to increase the withholding to $1,007 a month. (*Ibid.*)

Diane filed an application with the California court requesting a determination of spousal support arrearages and that interest be "reattached" to the Utah judgment. (*Connolly, supra*, 20 Cal.App.5th at p. 400.) In February 2015, Joseph moved to terminate California's jurisdiction over his support obligations. (*Id.* at pp. 400-401.) In June, the California court denied Joseph's motion for termination of child and spousal support jurisdiction, modified the income withholding order from $1,007 to $600 a month, and determined that the Utah judgment in the amount of $50,491.73 was "subject to California's statutory interest rate on arrears" (i.e., 10 percent interest) (the 2015 order). (*Id.* at p. 401.)

In January 2016, Joseph filed a motion in the California court contesting enforcement of the support arrearages, arguing that the California court could not modify the Utah judgment to add interest. (*Connolly, supra*, 20 Cal.App.5th at p. 401.) After a

---

[3] Joseph was retired from the Coast Guard and his sole income was his pension. (*Connolly, supra*, 20 Cal.App.5th at p. 400, fn. 3.) Most (if not all) of the support payments came from withholding orders on his pension. (*Ibid.*)

4

hearing in May, the motion was denied with prejudice. (*Id*. at pp. 401-402.) In August, the court found no issues for trial and denied a stay of enforcement of the 2015 order (the 2016 order). (*Id*. at p. 402.)

*Prior Appeal*

Joseph appealed the 2015 and 2016 orders. The appeals were consolidated for argument and disposition. (*Connolly, supra*, 20 Cal.App.5th at p. 395.) Joseph argued that (1) California lacked jurisdiction to enter the orders because the Utah judgment on arrearages was the "controlling order" under the Uniform Interstate Family Support Act (UIFSA), and (2) by adding interest to the arrearages, the California court failed to grant full faith and credit to the Utah judgment, which did not include interest. (*Id.* at p. 399.)[4]

In February 2018, a panel of this court concluded that while the Utah judgment was not a controlling order under UIFSA, the California court nonetheless erred in modifying that judgment to add California interest. (*Connolly, supra*, 20 Cal.App.5th at pp. 399, 403-406.)[5] We reversed the portion of the 2015 order that purported to add

---

[4] While his appeals were pending, Joseph filed a motion for sanctions, which was denied in June 2017.

[5] In reaching this conclusion, we rejected Joseph's contention that California had no jurisdiction to enter the 2015 order (continuing the withholding order and adding interest to the Utah judgment) because the Utah judgment was not "a child support order" for purposes of UIFSA and thus was not a controlling order. (*Connolly, supra*, 20 Cal.App.5th at pp. 403-404.) We explained: "[T]he Utah judgment does not conflict with the California support order. It does not change the amount of support due or otherwise modify the California support order. Rather, it simply calculates the arrearages for both spousal and child support as of November 2012. Rather than a controlling order, we find the Utah judgment to be an order from a determination of arrears, an action recognized and authorized in UIFSA. [Citations.] [¶] The provisions of UIFSA do not determine jurisdiction over spousal support orders. California, as the issuing state, had continuing, exclusive jurisdiction over spousal support. [Citations.] Further, California had jurisdiction over child support because Joseph was a resident of California and Diane consented to jurisdiction. [Citations.] Thus, California had jurisdiction to issue the 2015 order." (*Id.* at p. 404.)

5

interest to the Utah judgment and remanded for further proceedings. (*Id*. at pp. 399, 406.) In doing so, we explained that, while there may be additional support arrearages owing, the Utah judgment was a final money judgment on arrearages owed as of November 30, 2012, to which the full faith and credit clause of the United States Constitution applied, and was res judicata on that issue, since the issue of interest could have been litigated in that matter. (*Id*. at pp. 405-406.)

> *Postappeal Proceedings in the California Court*

In April 2018, Joseph filed a motion for sanctions in the California court against Diane and the Department pursuant to a number of statutory provisions, including Family Code sections 271 and 273[6] and Code of Civil Procedure sections 128.7 and 177.5.[7] He argued that monetary sanctions were warranted because Diane and the Department had improperly sought to modify the Utah judgment by adding California interest, which resulted in "*years* of frivolous relitigation and extraordinary legal expenses."

In June 2018, Joseph filed a second motion for sanctions in the California court against Diane and the Department pursuant to section 128.7. He, again, argued that monetary sanctions were warranted due to Diane and the Department's "frivolous relitigation" of and improper "collateral attacks" on the Utah judgment, in the form of seeking to modify the judgment to add California interest. On the same day, Joseph also filed a motion seeking the disclosure of all Department records related to the enforcement of his support obligations. He argued that disclosure of the requested records was

---

[6] Joseph also asserted, without any legal analysis, that Family Code section 2107 sanctions *may* apply. The trial court's written order denying Joseph's request for sanctions did not address whether sanctions were warranted under this statute. On appeal, Joseph does not argue that the trial court erred by failing to award sanctions under the statute. As such, no further discussion of this issue is required.

[7] Further undesignated statutory references are to the Code of Civil Procedure.

necessary for the determination of the appropriate sanctions to impose against the Department for its improper enforcement actions.

In July 2018, the California court, in accordance with our prior opinion, struck the portion of its 2015 order adding California interest to the Utah judgment.

In August 2018, the Department provided to Joseph and Diane child and spousal support audits, which revealed that Joseph did not owe any child support after the California interest accruing on the support arrearages owing as of November 30, 2012, was eliminated from the accounting. The audits included California interest that had accrued on the support arrearages owing *after* November 30, 2012, i.e., after the time period adjudicated by the Utah judgment.

In September 2018, Joseph filed a third motion for sanctions in the California court against the Department and its chief attorney pursuant to sections 128.5 and 177.5. He argued that the Department's support audits constituted a collateral attack on the Utah judgment and an improper attempt to relitigate that judgment, since the Department took the frivolous position that California interest accruing on the support obligations owing after November 30, 2012, could be added to the Utah judgment. He, again, requested monetary sanctions.

In October 2018, the Department's enforcement case against Joseph was closed, as he no longer owed any child support and the Department did not, as a matter of policy, collect spousal support where there is no concurrent child support order.

In March 2019, the California court denied Joseph's motion for disclosure of Department records and his oral request at the hearing to present live testimony in support of the motion. The court found that the records were not relevant to the legal question of whether Joseph was entitled to monetary sanctions against the Department or to the determination of the appropriate amount of sanctions (if any), and that due process principles did not require disclosure of the records. The court further determined that good cause did not exist to allow Joseph to present live testimony in support of the

motion.  In making this determination, the court noted that, given Joseph's "obvious hostility" toward Diane and the Department and his failure to identify any witness other than alluding to his desire to elicit testimony from Diane and unnamed Department officials, it appeared his intent to call witnesses was "simply to delay the proceedings and harass" Diane and the Department.

In April 2019, Joseph filed a motion for new trial in the California court, arguing that the trial court erred in denying his motion for disclosure of Department records and his oral request to present live testimony in support of that motion.  The motion was denied in May 2019.

In December 2019, the California court denied Joseph's three separate motions for sanctions and found that good cause did not exist to allow live testimony in support of the motions.  The court denied the motions on the merits and declined to consider whether any of them should have been denied in whole or part based on procedural deficiencies identified by the Department.  This appeal followed.

## DISCUSSION

Joseph contends the trial court erred in denying his motions for sanctions and his related motion for disclosure of Department records.  He argues that monetary sanctions were warranted because Diane, the Department, and the Department's chief attorney improperly sought to modify the Utah judgment by adding California interest, in violation of res judicata principles and the full faith and credit clause of the United States Constitution.  We see no basis for reversal.

I

*Forfeiture*

Preliminarily, we conclude that Joseph has forfeited his claims of error.  It is a fundamental principle of appellate procedure that a trial court order or judgment is ordinarily presumed to be correct and the burden is on an appellant to affirmatively demonstrate that the trial court committed an error that justifies reversal of the order or

8

judgment. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 822.) To affirmatively show that error occurred, an "appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408; see *Bullock v. Philip Morris USA, Inc.* (2008) 159 Cal.App.4th 655, 685 ["appellant must affirmatively demonstrate error through reasoned argument, citation to the appellate record, and discussion of legal authority"].) "[C]onclusory claims of error will fail." (*In re S.C.*, at p. 408.)

"We are not bound to develop appellant['s] arguments for [him]. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived." (*In re Marriage of Falcone & Fyke*, *supra*, 164 Cal.App.4th at p. 830; see *Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368 [" 'This court is not inclined to act as counsel for . . . appellant and furnish a legal argument as to how the trial court's rulings . . . constituted an abuse of discretion' "]; *People ex rel. Dept. of Alcoholic Beverage Control v. Miller Brewing Co.* (2002) 104 Cal.App.4th 1189, 1200 ["appellant must present a factual analysis and legal authority on each point made or the argument may be deemed waived"]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 [when an appellant asserts a point but fails to support it with reasoned argument and citations to authority, we treat the point as waived].) Self-represented litigants are held to the same standards as attorneys and must comply with the rules of procedure. (See *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985; *Kobayashi v. Superior Court* (2009) 175 Cal.App.4th 536, 543.)

Joseph contends the trial court erred in refusing to award monetary sanctions, but his contention is not supported by meaningful legal analysis of the statutory provisions he relied on in the trial court to support an award of sanctions (e.g., §§ 128.7, 177.5). He offers no reasoned argument citing and applying any of those provisions to the facts of

9

this case.  Nor has he offered any reasoned argument in support of his conclusory contention that the trial court erred in denying his motion for disclosure of Department records.  He makes no effort to explain how the trial court erred supported by citations to legal authority and facts in the record.  As a consequence, he has forfeited his claims of error.

In any event, as we next explain, the claims fail on the merits.  The Department's enforcement records were not relevant to the question of whether Joseph was entitled to monetary sanctions, and the record does not support the conclusion that the trial court erred in refusing to award sanctions.

## II

### *Sanctions Order*

We review a sanctions order for abuse of discretion.  (See *People v. Kareem A.* (2020) 46 Cal.App.5th 58, 70 [applying § 177.5]; *Wallis v. PHL Associates, Inc.* (2008) 168 Cal.App.4th 882, 893, 902 [applying § 128.5]; *Burkle v. Burkle* (2006) 144 Cal.App.4th 387, 399 [applying § 128.7 and Fam. Code, § 271].)  An abuse of discretion occurs when it is shown the court's ruling is arbitrary or capricious (*Culbertson v. R.D. Werner Co., Inc.* (1987) 190 Cal.App.3d 704, 710) or exceeds the bounds of reason (*Denham v. Superior Court, supra*, 2 Cal.3d at p. 566).  " 'The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power.' " (*Ibid.*)

No abuse of discretion has been established here.  The trial court could easily and reasonably have concluded that the challenged conduct was not frivolous or otherwise sanctionable under the statutory provisions relied on by Joseph.  (See, e.g., Fam. Code, § 271 [authorizing monetary sanctions when the conduct of a party or attorney frustrates the policy of the law to promote settlement and, where possible, to reduce the cost of

10

litigation by encouraging cooperation between the parties and attorneys]; § 128.5 [monetary sanctions authorized where party or party's attorney engaged in bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay]; § 128.7 [authorizing monetary sanctions against an attorney or unrepresented party where a paper is submitted for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, or contains a legal contention not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law"]; § 177.5 [monetary sanctions authorized for a violation of a lawful court order without good cause or substantial justification, but not for advocacy of counsel before the court].)[8]

As noted *ante*, Joseph's first and second motions for sanctions were predicated on conduct by Diane and the Department that occurred *before* we issued our prior opinion, and sought relief pursuant to Family Code sections 271 and 273 and sections 128.7 and 177.5. We see no error in the trial court's denial of those motions. Although our prior opinion concluded that California interest accruing on the support arrearages owing as of November 30, 2012, could not be added to the Utah judgment by the California court based on res judicata principles and the full faith and credit clause of the United States

---

[8] Family Code section 273, on which Joseph relied in the trial court, provides as follows: "Notwithstanding any other provision of this code, the court shall not award attorney's fees against any governmental agency involved in a family law matter or child support proceeding except when sanctions are appropriate pursuant to Section 128.5 of the Code of Civil Procedure or Section 271 of this code." As the Department correctly points out, section 128.5 does not apply to this case because the actions or tactics at issue did not occur as part of a civil case filed prior to January 1, 2015. (§ 128.5, subd. (i).) On appeal, the Department, as it did in the trial court, has identified a variety of non-merits based reasons as to why the order denying Joseph's motions for sanctions should be affirmed. However, like the trial court, we limit our analysis to the merits of the sanctions motions.

Constitution,[9] the trial court acted well within its discretion in determining that neither Diane nor the Department engaged in sanctionable conduct by taking a contrary legal position *before* our prior opinion was issued. The trial court agreed with their position (i.e., California interest could be added to the Utah judgment), which, in our view, was not objectively unreasonable or taken primarily for an improper purpose such that sanctions were warranted under section 128.7. (See *Burkle v. Burkle*, *supra*, 144 Cal.App.4th at p. 401 [whether conduct is legally frivolous is governed by an objective standard; sanctionable conduct must be objectively unreasonable]; *Peake v. Underwood* (2014) 227 Cal.App.4th 428, 440 [a legal claim is objectively unreasonable if " 'any reasonable attorney would agree that [it] is totally and completely without merit' "].) Nor can we say that the trial court abused its discretion in determining sanctions were not warranted under Family Code section 271, which is aimed at uncooperative conduct that frustrates settlement and unreasonably increases costs of family law litigation. (*Parker v. Harbert* (2012) 212 Cal.App.4th 1172, 1176-1178; see *In re Marriage of Abrams* (2003) 105 Cal.App.4th 979, 991 [Fam. Code, § 271 sanctions reversed, in part, because "although father's argument regarding the burden of proof has failed, it was not so devoid of merit that no reasonable person would have pursued it"], disapproved on another ground in *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1097.)[10] Further, we find no abuse of discretion in the trial court's refusal to award

---

[9] As we explained in our prior opinion: "Utah policy is to include interest on arrearages only where the interest has been reduced to a lump sum or the initiating state has calculated it. Thus, the Utah judgment *could have* included interest if the amount had been provided to the Utah ORS. Since the issue of interest could have been litigated and was not, the Utah judgment is res judicata on that issue." (*Connolly, supra*, 20 Cal.App.5th at pp. 405-406.)

[10] We note that this long-running dispute between the parties, including the need for the Utah judgment, could have been avoided had Joseph simply met his support obligations in a timely fashion. Joseph claims to be the victim of sanctionable conduct on the part of

12

sanctions under section 177.5. The trial court concluded that a court order was not violated, and Joseph has not shown otherwise. Joseph does not argue, and the record does not reflect, that the Utah court ruled or even suggested that a California court could not add interest to the support arrearages owing as of November 30, 2012. Instead, the Utah court simply did not include California interest in calculating the support arrearages owing as of November 30, 2012, which was consistent with a Utah state policy under the circumstances of this case. In short, the record does not support the conclusion that a lawful court order was violated (e.g., the Utah judgment) within the meaning of section 177.5. (See § 177.5 [sanctions warranted for violation of a lawful court order without good cause or substantial justification, but not for advocacy of counsel before the court].)

Finally, we see no error in the trial court's denial of Joseph's third motion for sanctions. As noted *ante*, this motion was predicated on conduct by the Department and its chief attorney that occurred *after* we issued our prior opinion, and sought relief pursuant to sections 128.5 and 177.5. It was premised on the assumption that California interest cannot be added to the support arrearages owing *after* November 30, 2012. No court involved in this case has made such a determination, and Joseph has not otherwise shown that sanctions were warranted based on the Department's taking the legal position that California interest *can* be added to the support arrearages owing after November 30, 2012. Indeed, California law governs the computation and payment of arrearages and accrual of interest on arrearages owing under the controlling support order issued by the California court. (See Fam. Code, § 5700.604, subd. (a).) As we clearly explained in our prior opinion, the Utah judgment is a final judgment on arrearages owing *only* as of

---

Diane and others, complaining that they improperly attacked the Utah judgment, which determined that he himself owed support arrearages in an amount exceeding $50,000. We fail to see how Joseph's pursuit of sanctions and this appeal comply with the public policies expressed in Family Code section 271: promoting settlement of litigation, reducing the costs of litigation, and encouraging the cooperation of the parties and counsel. (*Parker v. Harbert, supra,* 212 Cal.App.4th at pp. 1176-1177.)

13

November 30, 2012.  We specifically noted that there may be additional arrearages owing after this date and did not hold or suggest California interest could not be added to such arrearages.  (*Connolly, supra*, 20 Cal.App.5th at pp. 405-406.)

In sum, we conclude Joseph has failed to carry his burden to affirmatively demonstrate error.[11]  Therefore, we will affirm the trial court's orders.

## DISPOSITION

The trial court's orders are affirmed.  The Department shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


_____/s/_____

Duarte, J.


We concur:


_____/s/_____

Robie, Acting P. J.


_____/s/_____

Mauro, J.


_____

[11]  In view of our conclusion, we do not consider Joseph's argument that the Department lacked the authority to file a respondent's brief (*Hiser v. Bell Helicopter Textron Inc.* (2003) 111 Cal.App.4th 640, 655 [appellate courts generally "decline to decide questions not necessary to the decision"], and we deny his request to take judicial notice of certain matters related to this argument.  (*Quantification Settlement Agreement Cases* (2011) 201 Cal.App.4th 758, 795, fn. 22 [request for judicial notice denied where documents were irrelevant to the resolution of the issues raised on appeal].)  We also decline to consider Joseph's argument that the trial court erred because the Department consented to the granting of his sanctions motions by failing to file responsive declarations.  This argument was raised for the first time in Joseph's reply brief and he provides no justification for failing to present it earlier.  (*Save the Sunset Strip Coalition v. City of West Hollywood* (2001) 87 Cal.App.4th 1172, 1181, fn. 3 ["absent justification for failing to present an argument earlier, we will not consider an issue raised for the first time in a reply brief"].)

14